**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| JACQUELINE GALLOWAY, *on behalf of herself and others similarly situated* : : : | |
| v. : : : | Civil No. CCB-13-3240 |
| SANTANDER CONSUMER USA, INC. : | |

**MEMORANDUM**

Plaintiff Jacqueline Galloway filed this action against Santander Consumer USA, Inc. ("Santander"), seeking damages for breach of contract and a violation of the Maryland Credit Grantor Closed End Credit Provisions ("CLEC"). Santander has filed a motion to compel arbitration and stay this proceeding, claiming Galloway previously agreed to arbitrate any disputes concerning her loan. Galloway has filed a motion to amend her complaint, which Santander opposes on the ground that it would be futile given Galloway's agreement to submit all claims to arbitration. The parties have fully briefed the issues, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons set forth below, Santander's motion to compel arbitration will be granted and Galloway's motion to amend her complaint will be denied.[1]

**BACKGROUND**

Galloway financed the purchase of a car with a loan obtained through a retail installment contract ("the RISC") with Fox Chevrolet, Inc. (Compl., ECF No. 2, ¶¶ 21-22; RISC, ECF No. 12-2, at 1.) The terms of the RISC are governed by Maryland's CLEC provisions. Md. Code

---

[1] Galloway also asks the court to strike the exhibits attached to Santander's motion because they are unauthenticated. The court will not do so. Not only did Santander submit an affidavit with its reply authenticating the exhibits, (Nightengale Decl., ECF No. 15-1), but Galloway attached and authenticated the same exhibits to her opposition memorandum. In any event, the court only cites to Galloway's exhibits here.

1

Ann., Comm. Law § 12-1001 *et seq.* (Compl. ¶ 23.) The RISC was assigned to CitiFinancial, Inc. ("CitiFinancial"), and CitiFinancial took a security interest in Galloway's vehicle. (Compl. ¶¶ 25, 26.)

Sometime before October 31, 2008, Galloway contacted CitiFinancial seeking to lower her monthly payment on the loan. (Galloway Decl., ECF No. 12-1, ¶ 10.) The CitiFinancial representative with whom Galloway spoke told her she would be sent paperwork—an Amendment Agreement ("the Agreement")—to review and sign and that, once she sent a copy with her original signature back to CitiFinancial, the company would review it and would have to approve it before her payment was lowered. (*Id.* ¶¶ 11-13; *see also* Unexecuted Agreement, ECF No. 12-4, at 1 (statement accompanying the Agreement that it was subject to further review by CitiFinancial once Galloway signed and returned it).) According to Galloway, the CitiFinancial representative also told her that CitiFinancial would notify her in writing if her request was approved. (Compl. ¶ 14.)

The Agreement that CitiFinancial sent to Galloway provided for a monthly payment of $365.57, reduced from $487.46, effective October 31, 2008, with the first payment due December 14, 2008. (*See* RISC at 1; Unexecuted Agreement at 2.) It also included an arbitration provision under which Galloway and CitiFinancial, as well as its assignees, could elect arbitration for any dispute, "whether in contract, tort, or otherwise," and thus require both parties to give up their rights to trial by court or jury. (Unexecuted Agreement at 3.) Further, the arbitration provision stated that Galloway could not serve as a class representative or participate in a class action if arbitration was elected. (*Id.*) Galloway signed the Agreement on November 12, 2008, and faxed it back to CitiFinancial. (*See* Galloway Decl. ¶¶ 17-19; Executed

Agreement, ECF No. 12-5.)  She never sent an original, signed copy.  (Galloway Decl. ¶ 20.)

There is no evidence that CitiFinancial ever sent Galloway written approval of the Agreement.  Beginning December 13, 2008, however, Galloway's payment records demonstrate that she began paying $366.43 per month.  (Payment History, ECF No. 12-3, at 3.)  There is no evidence of any further discussions between Galloway and CitiFinancial to explain the 86-cent discrepancy between the amount Galloway actually paid each month and the $365.57 monthly payment listed in the Agreement.  Galloway only states in her declaration that "sometime after November 14, 2008, CitiFinancial lowered my scheduled monthly payments to $366.43" and that this was the result of "[t]he agreement between [her] and CitiFinancial entered into at some time after November 14, 2008."  (Galloway Decl. ¶¶ 23-24.)  She provides no evidence of any communications from which a new agreement would have resulted.

CitiFinancial eventually assigned the security interest in Galloway's car to Santander.  When she fell behind on her payments, Santander repossessed the car in November 2012.  (Compl. ¶ 31.)  Santander sold the car and, after failed attempts to collect the outstanding deficiency, waived Galloway's remaining obligations in July 2013.  (*Id.* ¶¶ 32-43.)  Shortly after receiving notice that Santander had waived any further amount owed by her, Galloway brought this action in the Baltimore City Circuit Court, claiming Santander breached the RISC and violated the CLEC by failing to provide adequate notice of its intention to sell her car.  (*Id.* ¶¶ 60-71.)  Galloway purports to bring suit on behalf of herself and all persons similarly situated.  (*Id.* ¶ 44).  Santander removed the case to this court on October 31, 2013. (Notice of Removal, ECF No. 1.)

**ANALYSIS**

The Federal Arbitration Act ("FAA") directs federal courts, "on application of one of the parties," to stay proceedings "brought . . . upon any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3.[2] Thus, "where a valid arbitration agreement exists and the issues in a case fall within its purview," the court must grant a motion to compel arbitration. *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002). Galloway does not dispute that her claims fall within the scope of arbitrable issues under the arbitration clause in the Amendment Agreement. Instead, she claims that she and CitiFinancial never entered into a contract under the terms of the Agreement, and thus that Santander, as CitiFinancial's assignee, cannot compel her to arbitrate.

Although the Fourth Circuit does not appear to have addressed the issue directly, district courts in this circuit have applied a summary judgment-like standard to the question of whether a contract to arbitrate was formed. *See, e.g.*, *Shaffer v. ACS Gov't Servs., Inc.*, 321 F. Supp. 2d 682, 684, 684 n.1 (D. Md. 2004) (citing *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980)); *Minter v. Freeway Food, Inc.*, 2004 WL 735047, at *2 (M.D.N.C. Apr. 2, 2004)[3]. Thus, unless there is no genuine issue of fact as to whether a contract was formed, the court must submit the question to the jury. *Par-Knit Mills*, 636 F.2d at 54. Here, there does not appear to be any dispute of material fact as to what transpired between the parties or between Galloway and CitiFinancial when Galloway requested a lower payment. The court will decide as a matter of law, therefore, whether a valid agreement to arbitrate was formed. Courts apply "ordinary state-law principles that govern the formation of contracts when

---

[2] The parties do not dispute that the FAA applies to any agreement to arbitrate in this case.
[3] Unpublished opinions are cited for the soundness of their reasoning, not for any precedential value.

assessing whether the parties agreed to arbitrate a matter." *Noohi v. Toll Bros., Inc.*, 708 F.3d 599, 607 (4th Cir. 2013) (internal quotation marks and citations omitted); *see also Adkins*, 303 F.3d at 501; *Shaffer*, 321 F. Supp. 2d at 685.  The parties do not dispute that Maryland law governs issues of contract formation here.

The cornerstone of contract formation is mutual assent between two parties, both of whom must demonstrate an intention to be bound. *Cochran v. Norkunas*, 919 A.2d 700, 708 (Md. 2007).  Here, Galloway does not appear to, and reasonably cannot, dispute that she intended to be bound by the terms of the Amendment Agreement; she signed it. *See NeighborCare Pharm. Servs., Inc. v. Sunrise Healthcare Ctr., Inc.*, 2005 WL 3481346, at *2 (D. Md. Dec. 20, 2005) (finding a party "clearly agreed to be bound" by a contract where it had signed it).  Instead, she claims CitiFinancial never assented to the terms of the Amendment Agreement, including the arbitration provision, because CitiFinancial ultimately charged her 86 cents more per month than the amount listed in the Agreement and charged her a late fee under the original payment scheme after the date on which the Agreement was to take effect.

Because CitiFinancial retained the right to approve the Agreement before Galloway's monthly payments would be lowered, the court agrees with Galloway that a contract had not been formed when she signed the Amendment Agreement and transmitted it back to CitiFinancial; rather, she had made an offer to CitiFinancial.  CitiFinancial accepted her offer, however, and a contract was formed, when CitiFinancial began charging Galloway a lower monthly payment on her loan, with payments beginning in December 2008 as specified in the Agreement.

The 86-cent discrepancy between the amount listed in the Agreement and the amount for

which Galloway eventually was billed does not preclude such a conclusion. First, the court agrees with the defendant that it is a *de minimis* difference, providing little persuasive evidence that CitiFinancial intended anything other than to perform under the terms of the Agreement signed by Galloway. Even to the extent the increase can be deemed a modification or counter-offer, however, Galloway accepted it by making payments at the slightly higher amount, with no objection, for the rest of the four years she made payments on the account. *See Montage Furniture Servs., LLC v. Regency Furniture, Inc.*, 966 F. Supp. 2d 519, 524 (D. Md. 2013) (noting that, under Maryland law, an acceptance with terms different from the offer is a counteroffer); *Cheston L. Eshelman Co. v. Friedberg*, 13 A.2d 68, 73 (Md. 1957) (holding that "[a] reply to an offer which alters in any manner the suggested method of performance is not a true acceptance of the offer, but in reality is a conditional or qualified acceptance, which amounts to a counter-offer" and noting that a counter-offer can be accepted by performance). There is no evidence to support a conclusion that by modifying the Agreement or providing a counteroffer with respect to the monthly payment amount, CitiFinancial intended to discard or alter the rest of the terms of the Agreement—including the arbitration provision—especially where it had drafted and included those terms in the first place.[4]

That CitiFinancial charged Galloway a late fee in accordance with the original terms of

---

[4] In addition, there is no evidence to support a finding that Galloway and CitiFinancial entered into a novation such that the arbitration provision in the Agreement was set aside. *See Holzman v. Fiola Blum, Inc.*, 726 A.2d 818, 830 (Md. App. 1999) ("[A] novation is a new contractual relation that extinguishes the contract that was previously in existence between the parties." (internal quotation marks and citation omitted)). Galloway's own conclusory statement in her declaration that she and CitiFinancial entered into an agreement "sometime after November 14, 2008," that was not evidenced in writing, is insufficient. *See I.W. Berman Properties v. Porter Bros., Inc.*, 344 A.2d 65, 70 (Md. 1975) ("A novation is never presumed; the party asserting it must establish clearly and satisfactorily that there was an intention, concurred in by all the parties, that the existing obligation be discharged by the new obligation."). Further, because the court finds the Agreement was governing the parties' relationship, and it included a written arbitration provision, Galloway's argument that the arbitration agreement was not in writing, *see* 9 U.S.C. § 4 (requiring an agreement to be in writing for a party to enforce it), is without merit.

the RISC on November 3, 2008, also does not demonstrate CitiFinancial's rejection of the terms of the Agreement. Under the RISC, CitiFinancial was entitled to charge Galloway a late fee of ten percent of any past-due payments. (RISC at 1.) With monthly payments apparently due around the middle of each month, (*id.* (stating Galloway's payments were due monthly beginning on April 17, 2007)), and a grace period of fifteen days, (*id.*), it is clear that the late fee assessed on November 3rd was assessed for payments missed prior to October 31, 2008. Galloway apparently believes, however, that after the effective date of the Agreement—October 31, 2008—CitiFinancial could only charge her late fees equal to ten percent of the new, lower monthly payment amount, even for payments missed while the original terms of the RISC were still in force. According to Galloway, therefore, CitiFinancial clearly rejected the terms of the Agreement by charging her a late fee of ten percent of her higher, old monthly payment amount on November 3, 2008. There is nothing in the RISC or the Agreement to suggest that CitiFinancial was not entitled to collect the full amount of the late fee owed for payments missed under the original terms of the RISC. CitiFinancial did not assess the late fee, therefore, in violation of the terms of the Agreement, and the charge provides no relevant evidence in determining whether CitiFinancial intended to be bound by the terms of the Agreement.

Galloway also claims that her failure to send a signed original of the Agreement to CitiFinancial constituted the failure of a condition precedent such that performance under the Agreement was excused. (*See* Executed Agreement at 2 ("Borrower(s) agree that this Agreement is void if Company has not received a signed original of this Agreement on or before November 14, 2008.").) By providing Galloway with lower monthly payments despite her failure to send a signed original, however, CitiFinancial waived the condition, and performance

under the Agreement's terms was not excused.[5]  *See Hovnanian Land Inv. Grp., LLC v. Annapolis Towne Centre at Parole, LLC*, 25 A.3d 967, 983 (Md. 2011) ("[A] party may waive, by its *actions* or statements, a condition precedent . . . ." (emphasis added)); *Twining v. Nat'l Mortg. Corp.*, 302 A.2d 604, 607 (Md. 1973) (noting that "[i]t would be an odd rule of law that would permit [one party] to avoid liability . . . because [the other party] failed to insist upon performance of a provision obviously meant for its protection").  To the extent Galloway also claims CitiFinancial had to provide its assent to the Agreement in writing for it to be enforceable,[6] (*see* Galloway Decl. ¶ 14), the argument fails for the same reason.  In any event, Galloway cannot now disclaim the Agreement after having accepted the benefit of it—i.e. lower monthly payments.  *See Mona Elec. Co. v. Shelton*, 833 A.2d 527, 535 (Md. 2003) (explaining that a party is precluded from asserting rights he otherwise may have had but for his voluntary conduct where another party relied on that conduct to his detriment).

## CONCLUSION

Because Galloway's claims against Santander are subject to arbitration under a valid agreement to arbitrate, Santander's motion to compel arbitration will be granted and this case will be stayed.  In addition, Galloway's motion to amend her complaint will be denied without prejudice.  Her proposed amendments provide no facts from which to find she is not required to submit her claims to arbitration and thus would be futile at this time.  *See HCMF Corp. v. Allen*, 238 F.3d 273, 276 (4th Cir. 2001) ("A motion to amend should be denied [when] . . . the amendment would be futile.") (internal citation and quotation marks omitted).  A separate order

---

[5] The court notes that, to the extent the requirement that she send a signed original can be said to have been for Galloway's benefit or protection, there is no evidence to suggest that she too did not assent to the waiver as she accepted the lower monthly payment and paid according to those terms for the duration of the contract.

[6] Such a requirement is included nowhere in the Agreement itself or the cover page sent with the Agreement to Galloway.  (*See* Unexecuted Agreement.)

follows.


September 3, 2014                                                    /s/
         Date                                           Catherine C. Blake
                                                        United States District Judge